UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JACOB WOLD,<br><br>            Petitioner,<br><br>    vs.<br><br>FEDERAL BUREAU OF PRISONS,<br><br>            Respondent. | 4:18-CV-04061-VLD<br><br>ORDER GRANTING RESPONDENT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>DOCKET NO. 14 |

## INTRODUCTION

This matter is before the court pursuant to 28 U.S.C. § 2241 on the *pro se* habeas petition of Jacob Wold, an inmate at the Yankton Federal Prison Camp in Yankton, South Dakota. See Docket No. 1. The parties have consented to this magistrate judge deciding their case pursuant to 28 U.S.C. § 636(c). Pending is respondent's motion for summary judgment Mr. Wold's petition without holding an evidentiary hearing. See Docket No. 14. For the reasons more fully discussed below, the court grants respondent's motion.

## FACTS

Respondent submitted a statement of undisputed material facts. See Docket No. 18. Mr. Wold did not formally dispute this statement. In his brief in opposition to respondent's motion, Mr. Wold set forth his own statement of facts. Mr. Wold's statement does not conflict with respondent's statement. The court accordingly sets forth respondent's statement of facts herein, supplemented where indicated by additional facts supplied by Mr. Wold.

Mr. Wold was sentenced in the United States District Court for the Western District of Wisconsin on June 26, 2006, to an 88-month term of imprisonment for a federal drug offense. See Docket No. 18 at ¶ 1. He was also ordered to serve three years of supervised release following his release from prison. Id. at ¶ 2. At Mr. Wold's sentencing hearing, the court applied a two-point adjustment under the United States Sentencing Guidelines ("USSG") because he possessed a firearm or dangerous weapon in connection with his drug crime. Id. at p. 4, ¶¶ 17-19.

Mr. Wold served out his term of imprisonment and began serving his three-year term of supervised release on this conviction on February 17, 2012. Id. at pp. 1-2, ¶ 3. Thereafter, he became involved in illegal drug activity once again. Id. at p. 2, ¶¶ 4-6. This activity resulted in a petition to revoke supervised release being filed in his 2006 case and a new indictment dated October 3, 2012, both in the Western District of Wisconsin. Id. In his 2012 case, Mr. Wold entered into a plea agreement and pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine in return for the other charge of the indictment being dropped. Id. Mr. Wold also admitted to violating the terms of supervised release in his 2006 case, resulting in his supervised release being revoked. Id. at ¶¶ 9-10.

On April 24, 2013, Mr. Wold was sentenced in both cases. Id. at pp. 2-3, ¶¶ 7 & 10. The court imposed a 120-month (10-year) term of imprisonment in his new 2012 case and a 15-month term of imprisonment in his 2006 case. Id. Both sentences were ordered to be served concurrently with each other. Id.

The Bureau of Prisons ("BOP") aggregated these two sentences and treated them as a single sentence pursuant to 18 U.S.C. § 3584(c). Id. at p. 3, ¶¶ 11-13. Thus, the BOP considers Mr. Wold to be serving a single 120-month term of imprisonment. Id.

Mr. Wold began serving his 10-year sentence of incarceration at Milan Federal Correctional Institution in Milan, Michigan, and was subsequently transferred to the Yankton Federal Prison Camp where he now resides. In June, 2017, while at Yankton, Mr. Wold interviewed for the residential drug abuse program (RDAP) and was approved to attend the program.[1] Mr. Wold believed when he enrolled in RDAP that he would be eligible for an early release incentive. However, the Bureau of Prisons (BOP) subsequently informed him he was not.[2]

On July 21, 2017, the BOP completed an offense review for Mr. Wold. Id. at p. 3, ¶ 14. Applying a BOP regulation, 28 C.F.R. § 550.55(b), the BOP determined that Mr. Wold's "current offense" precludes him from eligibility for the RDAP early release consideration. Id. at ¶ 15. This is because the "current

---

[1] When a prisoner seeks to participate in RDAP, there is a two-step inquiry: (1) does he qualify for the program—i.e. does he have a substance abuse problem (see 18 U.S.C. § 3621(b), stating the BOP "shall make available appropriate substance abuse treatment for each prisoner . . . [who] has a treatable condition of substance addiction or abuse"), and (2) does he qualify for consideration for early release if he does successfully complete the program? The BOP properly concluded Mr. Wold qualified to participate in RDAP under the first step. It is the second step of the inquiry implicated by Mr. Wold's petition.

[2] The facts in this paragraph come from Mr. Wold's pleadings and are provided for context.

offense" (i.e. his 2006 conviction) involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives" and "by its nature or conduct, presents a serious risk of physical force against the person or property of another." Id. The BOP has issued program statement 5162.05 which provides that an inmate who was convicted of a federal drug crime and who received an enhancement under the USSG for the use or possession of a firearm or dangerous weapon is not eligible for consideration for early release under RDAP. Id. at ¶ 16. Thus, because the BOP considers Mr. Wold's 2006 conviction to be his current conviction, and because that conviction included an enhancement under the USSG for possessing a firearm, the BOP has determined Mr. Wold is not eligible to be considered for early release under RDAP.[3]

Mr. Wold filed an administrative grievance regarding the RDAP early release incentive and exhausted his administrative remedies. He now asks the court to declare the BOP's calculation of his sentence to be unconstitutional and to grant habeas relief in the form of declaring him to be eligible for the early release consideration under the RDAP.[4]

---

[3] Mr. Wold was still eligible to participate in RDAP. He did participate and, indeed, successfully completed the program, to his enormous credit. The court congratulates him on this accomplishment. Regardless of the outcome of this habeas case, he will reap the rewards of having completed RDAP.

[4] The facts in this paragraph are also taken from Mr. Wold's pleadings. Respondent never contests the fact that Mr. Wold has exhausted his administrative remedies.

Respondent moves to dismiss Mr. Wold's habeas petition without holding an evidentiary hearing.  See Docket No. 14.  Under the established facts and the law, respondent argues, Mr. Wold is not entitled to habeas relief.  Id. Mr. Wold opposes respondent's motion.  See Docket No. 24.

## DISCUSSION

**A.      Summary Judgment Standard**

The respondent has moved to dismiss under Rule 12(b)(6), or alternatively for summary judgment under Rule 56 on Mr. Wold's claim.  In support of his motion, the respondent has submitted a declaration with supporting documents.  Docket 19.  Respondent has also submitted a statement of undisputed facts.  Docket 18.

Rule 12(b)(6), requires the court to evaluate the sufficiency of a plaintiff's pleading of a claim in his or her complaint.  See FED. R. CIV. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the complaint, however.  Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  Id. (citing Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))).

Rule 56, the rule for summary judgment, allows the court to consider affidavits, documents, deposition transcripts and other items extraneous to the complaint in determining whether to grant the motion. See Fed. R. Civ. P. 56. In this district, a summary judgment motion also requires the movant to file, and the nonmovant to respond to, a statement of undisputed material facts. See DSD L.R. 56.1A and B. Here, respondent filed a declaration with accompanying exhibits (such as copies of the judgments from Mr. Wold's federal criminal files), and a statement of undisputed material facts in support of his motion to dismiss. Because the respondent explicitly moved in the alternative for summary judgment and filed a statement of undisputed facts, the court construes the respondent's motion as one for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall issue in favor of the movant only if there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. Here, this matter is well suited to resolution by summary judgment as there appears to be no dispute of any facts. The parties' arguments center solely on questions of law.

**B.    Analysis of Mr. Wold's Petition for Habeas Relief**

Some bedrock principles require stating before analyzing Mr. Wold's contentions. A petition seeking habeas relief under 28 U.S.C. § 2241 is appropriate if the petitioner is challenging the fact or duration of his confinement. Preiser v. Rodriquez, 411 U.S. 475, 490 (1973). The writ may issue if the defendant demonstrates he is in custody in violation of the federal Constitution, laws, or treaties. See 28 U.S.C. § 2241(c)(3). Here, the subject matter of Mr. Wold's request for habeas relief falls squarely within the ambit of § 2241 because he is not attacking his underlying conviction, but only the length of his sentence as calculated by the BOP—i.e. the fact that the BOP will not consider granting him early release.

Next, even if Mr. Wold demonstrates he is eligible for consideration of early release by virtue of successfully completing RDAP, the BOP would have the discretion to grant him early release, but would not be *required* to grant

such release.  18 U.S.C. § 3621(e)(2)(B)[5]; <u>Lopez v. Davis</u>, 531 U.S. 230, 241

(2001) ("[w]hen an eligible prisoner successfully completes drug treatment, the

[BOP] . . . has authority, but not the duty, . . . to reduce his term of

imprisonment.").  No prisoner has any constitutional or statutory right to early

release.  <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442

U.S. 1, 7 (1979).

Finally, administrative decisions by the BOP in interpreting the grant of

authority to it by Congress under 18 U.S.C. §§ 3621-3625 are not subject to

judicial review under the Administrative Procedure Act ("APA").  <u>See</u> 18 U.S.C.

§ 3625 (stating that the provisions of the APA (sections 554, 555 and 701-706)

"do not apply" to any determination, decision or order under 18 U.S.C.

§§ 3621-3625).  The BOP has authority to manage inmate drug treatment

programs such as RDAP by virtue of 18 U.S.C. § 3621.  Allowing prisoners to

bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's

discretionary determinations made pursuant to 18 U.S.C. § 3621 would be

inconsistent with the language of 18 U.S.C. § 3625.  <u>Reeb v. Thomas</u>, 636 F.3d

1224, 1228 (9th Cir. 2011).

Only if the BOP acts contrary to established federal law, violates the

Constitution, or exceeds its statutory authority do courts have jurisdiction to

review BOP action under the specified statutes.  <u>Id.</u>; <u>Accord</u>, <u>Gatewood v. T.C.</u>

---

[5] Section 3621(2)(B) states "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program ***may*** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." (emphasis supplied).

Outlaw, 560 F.3d 843, 846-47, n. 2 (8th Cir. 2009) ("§ 3625 may well preclude judicial review of BOP decisions applying the final rule and program statement to particular inmates."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("Accordingly it is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions.").

### 1. The BOP Did Not Act Contrary to Established Federal Law, in Violation of the Constitution, or in Excess of its Statutory Authority

An analysis of the applicable statutes, regulations and program statements demonstrates that the BOP did not act unlawfully. Congress provided in 18 U.S.C. § 3584(c) as follows:

> **Treatment of multiple sentences as an aggregate.**—Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

The RDAP statute, 18 U.S.C. § 3621(e)(2)(B), states "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." As noted above, this provision does not require the BOP to grant a prisoner early release even if he is eligible—instead, it gives the BOP discretion (the BOP "may") to grant such early release. Lopez, 531 U.S. at 241.

The Lopez decision was an appeal from the District of South Dakota involving very similar facts to Mr. Wold's case. The petitioner, Lopez, was a federal inmate who filed a § 2241 habeas petition, asserting he should be given

consideration under RDAP for early release.  Id. at 232-34.  Lopez had been

convicted of a federal drug crime and, at sentencing, the district court imposed

a two-level enhancement under the USSG for possessing a firearm in

connection with his drug crime.  Id. at 236.

The BOP categorically denied Lopez consideration for early release under

RDAP by virtue of a regulation it had promulgated prohibiting all prisoners

from consideration for early release if their current offense was a felony

attended by the carrying, possession or use of a firearm.  Id. at 232-34.  The

BOP regulation was not an attempt to define "nonviolent offense" as used in

§ 3621(e)(2)(B), nor was it an attempt to define "crime of violence."  Id. at 235.

Instead, the BOP recognized Congress gave it discretion to decide which

nonviolent offenders it would consider for early release and the BOP issued

regulations declaring which categories of cases it would consider for release

and which categories of cases it would not consider.  Id.  The Court pointed

out that § 3621 did not mandate the result in Lopez's case.  Id. at 235-36.

Instead, the result was mandated by the BOP regulation.  Id.

Thus, the issue before the Court was "whether the BOP had discretion to

delineate, as an additional category of ineligible inmates, those whose current

offense is a [nonviolent] offense involving a firearm."  Id. at 238.  The Court

concluded the BOP had acted lawfully in exercising its discretion by

promulgating the regulation.  Id. at 244-45.  Although the BOP could have

acted on a case-by-case basis, determining which inmates qualified for early

release and which did not individually, the Court held the BOP acted

11

permissibly by excluding certain inmates categorically from consideration, even though they may qualify as "nonviolent" offenders under the statute.  Id. at 240.  The BOP's determination that "inmates who possessed a firearm in connection with their current offense . . . displayed a readiness to endanger another's life" was entirely rational according to the Court, even if their offense was a nonviolent one.  Id.

The regulation at issue in Mr. Wold's case is the progeny of the one considered by the Lopez Court.  The applicable regulation provides in pertinent part:

§ 550.55 Eligibility for early release.

(a)  Eligibility.  Inmates may be eligible for early release by a period not to exceed twelve months if they:

* * *

(2) Successfully complete a RDAP . . . during their current commitment.

(b)  Inmates not eligible for early release.  As an exercise of the Director's discretion, the following categories of inmates are not eligible for early release:

* * *

(5) Inmates who have a current felony conviction for:

* * *

(ii) An offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device);

(iii) An offense that, by its nature or conduct, presents a serious potential risk of physical force against the person or property of another;

12

The BOP has further clarified that, for purposes of § 550.55(b)(5)(ii) above, an offense involves the carrying, possession or use of a firearm if, at sentencing, the district court applied a two-point enhancement under the USSG for carrying, using, or possessing a firearm in connection with a federal drug offense under 21 U.S.C. §§ 841 & 846. See Program Statement 5162.05, ¶ 4.b.

The Lopez Court settled once and for all that sentencing factors—like the two-point USSG enhancement for possessing a gun—can be the basis for denying RDAP eligibility as well as an element of the crime of conviction. Lopez, 531 U.S. at 239-41. Although Lopez approved an earlier version of § 550.55, the Eighth Circuit has approved the version applicable to Mr. Wold applying the reasoning of Lopez. See Giannini v. Fed. Bur. of Prisons, 405 Fed. Appx. 96, 97-98 (8th Cir. 2010).

Mr. Wold does not contest the BOP's decision to categorically deny inmates eligibility for early RDAP release. Rather, he contests the BOP's decision to aggregate his sentences, thereby using the gun enhancement on his 2006 conviction to affect his eligibility for RDAP early release.

But as can be seen from the language of § 3584(c) reproduced above, the BOP's decision to aggregate two sentences which are ordered to run concurrently is not contrary to Congress' grant of authority—it is required by Congress. Congress used the word "shall" when directing such sentences to be aggregated. See 18 U.S.C. § 3584(c).

Far from being arbitrary and capricious, as Mr. Wold asserts, the BOP's regulation and program statement flow logically and directly from Congress' mandate regarding aggregation of sentences and administration of the RDAP program. See also Payton v. Rowe, 391 U.S. 54, 67 (1968) (holding that a prisoner incarcerated on multiple sentences is "in custody" for purposes of habeas relief on all sentences). The BOP's exercise of its discretion has been approved by the Supreme Court in Lopez.

Mr. Wold points out, accurately, that § 3584(c) speaks of aggregating "terms of imprisonment," not "sentences." This is a distinction without a difference. Both "term of imprisonment" and "sentence" are used interchangeably to refer to a period of incarceration imposed for violation of the law. "Imprison" means to put in as in prison, to confine. See https://www.merriam-webster.com/dictionary/imprisonment (last checked Sept. 21, 2018). "Sentence" has as one of its definitions a "judgment, specifically one formally pronounced by a court or judge in a criminal proceeding and specifying the punishment to be inflicted upon the convict." Id. /sentence (last checked Sept. 21, 2018). A "sentence" specifies punishment. Where the "sentence" includes confinement, the "sentence" includes a "term of imprisonment."

The court concludes the BOP did not act unlawfully in promulgating its regulations and implementing RDAP. Thus, under § 3625, this court does not have the power to judicially review the BOP's actions. But Mr. Wold makes several arguments counter to this conclusion.

## 2.   The BOP Properly Aggregated the Revocation Sentence with the Sentence on the New Drug Indictment

Mr. Wold concedes that the BOP may aggregate his 2006 and 2012 sentences for purposes of computation and calculation purposes, but (he argues) not for purposes of determining his eligibility for early release under RDAP.  This is so, he argues, because the two sentences are different in nature—one a violation of law and the other a breach of trust—and it is improper to aggregate two such different sentences.

Mr. Wold argues that his sentence on his supervised release revocation represents a breach of trust, not a new criminal infraction.  Thus, he distinguishes his revocation sentence on his 2006 drug sentence from the 10-year sentence he received on his 2013 drug conviction and argues that it is inappropriate for the court to aggregate the two different-in-kind sentences.

Mr. Wold's analysis, while perceptive, does not carry the day.  Under the law, the sentence imposed for his supervised release conviction is not considered a separate sentence from his original sentence which was imposed in 2006, but instead is considered a reinstatement of the original term of imprisonment.  Johnson v. United States, 529 U.S. 694, 700 (2000) ("postrevocation sanctions [are] part of the penalty for the initial offense."); United States v. Bennett, 561 F.3d 799, 802 (8th Cir. 2009) ("the revocation of supervised release is a penalty attributable to the original conviction, not a new penalty.") (citing Johnson, 529 U.S. at 700-01); Campbell v. Coakley, 2017 WL 583146 at *7 (S.D. W. Va. Jan. 18, 2017) (stating "[i]t is well recognized that when a defendant is returned to prison after violating his supervised release, it

is the original sentence that is executed."). Thus, the BOP is not aggregating apples and oranges when it aggregated Mr. Wold's revocation sentence with his new drug sentence. The two sentences are considered to both be sentences for drug crimes under the above authorities. Johnson, 529 U.S. at 700; Bennett, 561 F.3d at 802. Thus, in Mr. Wold's case, the BOP is aggregating like sentences, not dissimilar sentences.

Furthermore, the exact same conduct is the basis for both sentences—Mr. Wold's resumption of his criminal drug activities. Thus, whether his revocation sentence is viewed as a "breach of trust" or not, it is in fact a sentence imposed for the exact same criminal conduct as the conduct supporting the 2013 sentence.

Mr. Wold cites United States v. Brown, 609 Fed. Appx. 969, 971-72 (11th Cir. 2015), in support of his assertion that a sentence imposed for violation of terms of supervised release is substantively different than the sentence imposed on the original offense. The former represents primarily a "breach of trust." The Brown decision is inapposite to Mr. Wold's case.

In that case, Brown argued his 24-month consecutive sentence imposed upon revocation of supervised release was substantively unreasonable. Id. at 970. The court upheld the district court's sentence, noting that Brown had committed a new federal drug crime for which he was also being sentenced. Id. at 971-72. The district court ordered the revocation sentence to run consecutive to the new drug sentence because otherwise, the sentence imposed would fail to punish Brown for the supervised release violation. Id. at 972.

The <u>Brown</u> decision does not stand for the proposition that the BOP is prohibited from aggregating a revocation sentence with a sentence on a new offense, as in Mr. Wold's case.

In any case, even if Mr. Wold succeeded in establishing that his revocation sentence is substantively different from his new drug sentence, the result would be the same. Section 3584(c) mandates that, for administrative purposes, the BOP "shall" aggregate all sentences on which an inmate is incarcerated. <u>See</u> 18 U.S.C. § 3584(c). The statute does not distinguish between "like" offenses and "unlike" offenses, or offenses representing a "breach of trust" and those representing some other ill or danger, or between "violent" and "nonviolent" offenses. For administrative purposes, all sentences are aggregated. <u>Id.</u>

Similar facts and a similar conclusion were presented in <u>Rankin-El v. Holinka</u>, 2007 WL 495004 (D. Minn. Feb. 13, 2007).[6] In that case, a federal inmate had been convicted of a drug offense with a two-point USSG gun enhancement, and then before his first sentence expired he was later convicted of a second drug offense with no such enhancement. <u>Id.</u> at *1. The petitioner's sentence on the later offense was ordered to be served consecutively to the first sentence. <u>Id.</u>

The BOP aggregated the sentences and denied the petitioner consideration for early RDAP release because of the gun enhancement on the

_____

[6] A copy of this unpublished opinion is attached hereto for Mr. Wold's review. <u>See</u> discussion *infra* at footnote 7 concerning Mr. Wold's access to unpublished opinions.

first sentence.  Id. at **1-2.  The petitioner argued the BOP should treat the sentences as serial sentences, not aggregate sentences and, because he had served sufficient time to account for the first sentence, he should be eligible for RDAP early release consideration.  Id.  The court held that the BOP acted properly, indeed that it was mandated by § 3584(c), to aggregate the sentences and deny consideration for early release.  Id. at **4-5.

This court reaches the same conclusion, as have several other courts. See Campbell, 2017 WL 583146 at **7-8 (affirming BOP's denial of RDAP early release eligibility where BOP aggregated prisoner's term of imprisonment for revocation of supervised release on a gun-related charge with his new sentence on a new indictment, both sentences imposed on the same date); Walters v. Ziegler, 2012 WL 1302636 at **6-7 (S.D. W. Va. Mar. 9, 2012) (same except sentences imposed on two consecutive days); Stewart v. Sanders, 2011 WL 5870547 at *3 (C.D. Ca. Oct. 12, 2011) (same as Campbell).

### 3. The BOP May Aggregate Sentences for *All* Administrative Purposes, Not Just for Sentence Calculation

Mr. Wold points out that neither Congress nor the BOP have defined "administrative" as that term is used in § 3584(c).  Thus, he argues that aggregation is permitted for calculation and computation of sentences, but that determining eligibility for early RDAP release is not an administrative function. Thus, he argues, his two sentences should not be aggregated in connection with determining his eligibility for RDAP early release.

"Administration" is defined as the performance of executive duties, management; the act or process of administering something; the execution of

18

public affairs as distinguished from policy-making."  See

https://www.merriam-webster.com/dictionary/administration (last checked

Sept. 21, 2018).  The Supreme Court stated in Lopez that Congress had

designated the BOP as "the agency empowered to *administer* the early release

program [under RDAP], . . ."  Lopez, 531 U.S. at 242.  Therefore, it is clear that

administering RDAP is an "administrative purpose" as that phrase is used in

§ 3584(c).  It follows, then, that aggregation of sentences is appropriate for

purposes of determining RDAP early release eligibility.

Mr. Wold cites Bailey v. Haynes, 2007 WL 3046292 (N.D. W. Va. Oct. 17,

2007),[7] and Lewis v. Daniels, 528 F. Supp. 2d 1099 (D. Or. 2007), in support of

his argument that aggregation here is not allowed.  In Bailey, Bailey filed a

petition for habeas relief under 28 U.S.C. § 2241, arguing he should be eligible

for consideration of early release under RDAP.  Bailey, 2007 WL 3046292 at *2.

The BOP initially told Bailey he did not qualify for early release because of a

firearms conviction which was aggregated with his drug conviction.  Id. at *3.

When Bailey pointed out that the firearms sentence and the drug sentence

were to run consecutively, and that he had already served sufficient time to

account for the earlier firearms conviction, the BOP granted Bailey's

---

[7] The Bailey decision is an unpublished opinion to which Mr. Wold obviously
had access as evidenced by the fact he cited it and discussed it.  See Docket
No. 1 at p. 8.  Mr. Wold represented to this court in other filings that he did not
have access to unpublished opinions.  See Docket No. 24 at pp. 4-5.  This
assertion appears to be untrue.  However, the court has undertaken to ensure
Mr. Wold received copies of all unpublished opinions cited herein.  See footnote
6, *supra*, and Docket No. 25 (directing respondent to supply Mr. Wold with
copies of all unpublished opinions cited in respondent's brief).

administrative grievance, told him he *did* qualify for early release, and told him his records had been corrected to reflect that fact.  Id.

The BOP later reversed course without explanation and denied Bailey consideration for early release.  Id. at **4-5.  The court held that "equity dictate[d]" that the BOP should be required to follow the directive they themselves had issued telling Bailey he was eligible under RDAP.  Id. at *6.

The Bailey decision is inapposite to Mr. Wold's situation.  In Mr. Wold's case, no agent of the BOP granted his administrative grievance, told him he would be considered for early release, and assured him his records would be corrected to reflect that fact.  Instead, he was first told that he qualified to participate in RDAP.  That merely signifies that the BOP found Mr. Wold had a treatable substance abuse disorder.  See 18 U.S.C. § 3621(b) (requiring the BOP to provide substance abuse treatment to *all* inmates who have a treatable substance abuse disorder).

The BOP did not tell Mr. Wold at the inception of his RDAP treatment that he was also eligible for early release.  Instead, after a review of Mr. Wold's court records, the BOP (properly) told him he was ineligible for early release, a fact Mr. Wold admits.  See Docket No. 1 at p. 3.  Furthermore, unlike the petitioner in Bailey, when Mr. Wold filed an administrative grievance of the denial, the BOP confirmed to him that he was *not* eligible for early release.  See Docket No. 19-7.  The Bailey court based its decision on equitable considerations because of the BOP's own actions in misleading or misinforming

Bailey; the decision is not based on an interpretation of the statutes and regulations applicable to the issue.  Id.

The Lewis decision is similarly unavailing to Mr. Wold as the court acknowledged therein that the BOP *could* permissibly deny early release eligibility under RDAP if an inmate possessed a firearm in connection with his current offense because that "rationally reflects the view that such inmates displayed a readiness to endanger another's life; . . . " Lewis, 528 F. Supp. 2d at 1101 (citing Lopez, 531 U.S. at 240).  Neither Lewis nor Bailey change this court's analysis of the phrase "administrative purposes" in § 3584(c).

> **4.     "Current" Means All Crimes For Which an Inmate is Serving a Sentence**

Mr. Wold argues that the ordinary lay definition or understanding of the word "current" is "last in time, most recent."  Therefore, he argues that the conviction which is last in time for him is the 2013 drug sentence which did not include an enhancement for possession of a weapon.  Therefore, he argues that he should be considered eligible for RDAP early release because his "current" conviction as that term is used in 28 C.F.R. § 550.55(b)(5)(ii)  is not a disqualifying conviction.

The BOP has specifically provided that § 3584(c) requires the BOP to aggregate sentences imposed for revocation of supervised release with sentences imposed for conviction on an indictment.  See Program Statement 5880.28 at Ch. I, 3.e(2) (p. 74).  Once aggregated, both sentences are Mr. Wold's "current" sentence.  Id.; 18 U.S.C. § 3584(c).  Furthermore, as noted in the "FACTS" section of this opinion, both of Mr. Wold's sentences—his

revocation sentence and his new-indictment sentence—were imposed on the same day.  If the dictionary and lay definition of "current" is "most recent" then neither of Mr. Wold's sentences are more recent than the other because they were both imposed on the same date.  Under even a lay definition of "current," both terms of imprisonment are "current" and are the terms of imprisonment pursuant to which Mr. Wold is now in custody.

In his supplemental brief on respondent's motion to dismiss, Mr. Wold distinguishes many of the above-cited cases on the basis that the sentences aggregated in those cases were ordered to run consecutively, while his sentences were ordered to run concurrently.  This is a difference without a distinction as § 3584(c) requires aggregation of all sentences, regardless of whether they are to run concurrently or consecutively.

### 5. The Statute, Regulations, and Program Directives Are Not Unconstitutionally Vague

Mr. Wold makes two arguments in support of his assertion that the law applicable in his case is unconstitutionally vague.  First, regarding 18 U.S.C. § 3621(e)(2)(B)[8] and 28 C.F.R. § 550.55(b)(5), he argues that the term "current felony conviction" is unconstitutionally vague.  Second, he argues the phrase "crime of violence" as used in 18 U.S.C. § 16(b), and referenced by § 3621(e)(2)(B) and 28 C.F.R. § 550.55(b)(5), is unconstitutionally vague, relying on <u>Johnson v. United States</u>, ___ U.S. ___, 135 S. Ct. 2551 (2015), and <u>Sessions v. Dimaya</u>, ___ U.S. ___, 138 S. Ct. 1204 (2018).

---

[8] The court notes that Congress did not use the word "current" in § 3621(e)(2)(B).

Regarding Mr. Wold's argument as to the definition of "current," the court considers this to be an as-applied constitutional challenge to the statutes and regulations.  See Sisney v. Kaemingk, 886 F.3d 692, 697 (8th Cir. 2018) (expressing a Constitutional preference for resolving challenges to statutes and regulations on an as-applied basis if possible rather than entertaining facial challenges).  As discussed immediately above, "current" is defined as "most recent," exactly as Mr. Wold posits it should be defined.  Because both of Mr. Wold's sentences were imposed on the same date, neither is "more recent" than the other.  Thus, there is nothing ambiguous, let alone unconstitutionally ambiguous, about the phrase "current sentence" as applied to Mr. Wold's case. Both of his sentences are the "current" sentence under which he is being incarcerated.

As to Mr. Wold's Johnson argument, the Court in Johnson construed the Armed Career Criminal Act (ACCA), which imposes an increased imprisonment term at sentencing if a defendant has three prior "violent felony" convictions. Johnson, 135 S. Ct. at 2555.  The ACCA defined "violent felony" as including any felony that "involves conduct that presents a serious risk of physical injury to another."  Id.  This definition is the so-called "residual clause" of the definition of "violent felony," which was called that because other felonies designated as "violent felonies" by the ACCA were enumerated by name in the Act.  Id. at 2556.  The Johnson Court held the residual clause was unconstitutionally vague.  Id. at 2563.

The ACCA did not come into play at all in either of Mr. Wold's underlying cases.[9]  Furthermore, as discussed above in the description of the <u>Lopez</u> case, Mr. Wold is *not* being denied consideration for early RDAP release because he has been convicted of a "violent felony."  Nor is he being denied release because of any definition of "nonviolent felony."  No.  Instead, he is being denied consideration of RDAP early release because the BOP, exercising its discretion to determine who to consider for release, has decided categorically that persons who received a two-point USSG enhancement at sentencing for possession of a firearm should not be eligible, regardless of the nature of the crime of conviction--violent, nonviolent or otherwise.  <u>See</u> 28 C.F.R. § 550.55(b)(5)(ii); Program Statement 5162.05, ¶ 4.b; <u>Lopez</u>, 531 U.S. at 238, 240, 244-45.

There is nothing vague or ambiguous about the BOP's regulation or program statement.  If a defendant received a two-point gun enhancement under the USSG at sentencing, the defendant is ineligible for early RDAP release.  Thus, the definition of "violent felony" as construed by the <u>Johnson</u> and <u>Dimaya</u> Courts is not implicated at all in Mr. Wold's case.

Mr. Wold also argues that the BOP's regulation violates the ex post facto clause.  Regulation § 550.55 does not violate the ex post facto clause if a prisoner was neither notified of eligibility for RDAP early release nor enrolled in RDAP prior to the effective date of the regulation or program statement.  <u>Giannini</u>, 405 Fed. Appx. At 97.  Here, Mr. Wold enrolled in RDAP in June,

---

[9] The case of <u>Sessions v. Dimaya</u>, ___ U.S. ___, 138 S. Ct. 1204 (2018), cited by Mr. Wold, which was an immigration case employing the same residual clause, did not apply to Mr. Wold at sentencing either.

2016, long after § 550.55 was promulgated and the BOP never affirmatively assured him he would be eligible for early RDAP release. Therefore, application of § 550.55 to Mr. Wold does not violate the ex post facto clause.

## CONCLUSION

Although the court is not ruling in Mr. Wold's favor, the court congratulates him for an extremely well-written, well-researched, clear and thoughtful presentation of his claims. Well done.

Based on the foregoing law, facts and analysis, it is hereby

ORDERED that respondent's motion for summary judgment [Docket No. 14] is granted and Mr. Wold's habeas petition is dismissed with prejudice. The court has considered a certificate of appealability and determined one should not issue as the issues presented herein are controlled by well-settled precedent indicating that the Constitution is not implicated by those claims.

DATED October 9, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge